IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEFFREY PARKER,

                         Petitioner,

  v.                                                       OPINION and ORDER

WARDEN EMMERICH,                                25-cv-410-jdp

                         Respondent.

---

Plaintiff Jeffrey Parker, proceeding without counsel, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. Dkt. 1. The government has responded. Dkt. 8. Parker has also filed a series of related motions. Dkt. 12; Dkt. 15; Dkt. 17.

Parker alleges that the Bureau of Prisons told him that he would be transferred from FCI Oxford to a halfway house on April 30, 2025. Dkt. 1, at 3. But the Bureau later delayed Parker's transfer until December 16, 2025. *Id.* at 4. I understand Parker to be contending that the First Step Act and Second Chance Act entitled him to be transferred to a halfway house in April, and the Bureau is unlawfully delaying his transfer until December.

I will allow Parker to supplement his briefing, Dkt. 17, and will consider all his filings. But I will deny his petition.

ANALYSIS

Before turning to the merits, I address the government's contention that I cannot review the Bureau's decision about where Parker will serve his sentence. *See* Dkt. 8, at 3–4. The government points to 18 U.S.C. § 3621(b), which states: "Notwithstanding any other provision

of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." 18 U.S.C. § 3621(b).

But Parker is not challenging the Bureau's placement decision, that is, its decision to place him in FCI Oxford during his sentence. Instead, he is challenging the Bureau's decision to change his transfer date because he believes the First Step Act and Second Chance Act entitled him to be transferred on April 30, 2025. Put differently, he is disputing whether the Bureau abided by statutory requirements concerning his incarceration status, and courts may review these types of disputes without running afoul of § 3621(b). *See, e.g., Baker v. Emmerich*, No. 25-cv-479-wmc, 2025 WL 1797141, at *2–3 (W.D. Wis. June 30, 2025). Consequently, § 3621(b)'s limitation on my ability to review the Bureau's placement decisions does not apply to Parker's petition.

I turn now to the merits of Parker's petition. The government contends that Parker's December 16, 2025, transfer date is consistent with the First Step Act and Second Chance Act. I agree and will address each act in turn.[1]

A. **First Step Act**

The First Step Act establishes a system allowing prisoners who successfully participate in evidence-based recidivism reduction programming or other productive activities to earn time credits. *See* 18 U.S.C. § 3632(d)(4). Time credits may be applied toward early transfer to prerelease custody or supervised release. *See id.* But the Bureau may not apply more than a year's worth of First Step Act time credits toward early release to supervised release. *See* 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d)(3).

---

[1] I won't consider whether Parker exhausted his administrative remedies because the government did not raise the issue.

Let's walk through the Bureau's calculation. Parker's projected release date was December 29, 2028. Dkt. 9, Ex. 6, at 4. In May 2025, Parker's First Step Act time credits were reassessed. *See* Dkt. 9, ¶ 12. He has earned 900 days of First Step Act time credits. *See* Dkt. 9, Ex. 6, at 2. Of those credits, 365 may be applied towards Parker's transfer to supervised release. *See* 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d)(3). So Parker's projected release date under the First Step Act is December 30, 2027. Dkt. 9, Ex. 6, at 4. He has 535 First Step Act time credits left. *Id.* at 2.

Applying his remaining 535 credits would allow a transfer to a halfway house on July 13, 2026. The Bureau has scheduled Parker to be transferred to a halfway house on December 16, 2025. Dkt. 9, ¶ 13. This is before the date Parker would otherwise be entitled to be transferred based on his remaining First Step Act time credits.

The Bureau properly calculated and applied Parker's First Step Act time credits. Parker's time credits did not entitle him to be transferred to a halfway house on April 30, 2025.

**B.  Second Chance Act**

Parker contends that the Bureau "has yet to implent the second chance act and even if they do as is the case of the petitioner, they take it away." Dkt. 2, at 5. I understand Parker to contend that the Bureau has not properly applied the Second Chance Act to his sentence and that the Act entitled him to be transferred to a halfway house on April 30, 2025.[2]

The Second Chance Act requires the Bureau to ensure that a prisoner spends a portion of the final months of his term of incarceration under conditions that allow him to prepare for

---

[2] The Bureau recommended that Parker be placed in a halfway house on February 28, 2025. Dkt. 2, Ex. 2, at 2. Parker explains that he was "subsequently assigned a firm [halfway house] placement date of April 30, 2025." Dkt. 11, at 2. Parker is currently scheduled to be transferred to a halfway house on December 16, 2025. Dkt. 1, at 4.

3

reentry into the community; the Bureau can satisfy this requirement by placing a prisoner in a halfway house. *See* 18 U.S.C. § 3624(c)(1); *see* 28 C.F.R. § 570.20(a). In determining whether an individual should be placed in a halfway house, the Bureau must consider the five factors listed in 18 U.S.C. § 3621(b). 18 U.S.C. § 3264(c)(6)(A). But the Bureau's obligation under the Second Chance Act is limited "to the extent practicable." 18 U.S.C. § 3624(c)(1).

The Second Chance Act "does not guarantee prisoners a particular amount of time in a halfway house." *Willis v. Holinka*, No. 10-cv-271-slc, 2010 WL 4225879, at *2 (W.D. Wis. Oct. 20, 2010). It does not guarantee that a prisoner will be placed in a halfway house at all. *See Baker*, 2025 WL 1797141, at *3.

Parker provided evidence showing that the Bureau considered the required factors when it initially concluded he should be placed in a halfway house. *See* Dkt. 2, Ex. 2, at 2. The Bureau has followed the Second Chance Act's requirements. Parker is not entitled to more.

**C. Remaining issue**

I will address one remaining issue. Parker alleges that the Bureau's decision to change his transfer date from April to December violates the Bureau's policy that placement dates "will not be modified." Dkt. 11, at 2. But that is not what the Bureau's policy says—it states that "[t]here is no expectation [that] the RRC/HC placement date will be modified once the referral has been submitted to the RRM office." Dkt. 9, Ex. 1, at 21.

Parker's residential reentry manager says in a declaration that Parker's December 16, 2025, transfer date was determined by considering "available community resources (including bedspace) at a halfway house near his release area." Dkt. 9, ¶ 13. This helps explain why, counter to the Bureau's expectation, Parker's transfer date needed to be changed. The Bureau did not violate its policy by modifying Parker's transfer date.

Parker was expecting to be transferred from prison to a halfway house in April, and now he must wait until December because space wasn't available earlier. The First Step Act and Second Chance Act do not entitle him to an earlier transfer date.

ORDER

IT IS ORDERED that:

1. Petitioner Jeffrey Parker's motion seeking leave to supplement his reply brief, Dkt. 17, is GRANTED.

2. Parker's petition for writ of habeas corpus under 28 U.S.C. § 2241, Dkt. 1, is DENIED.

3. Parker's supplemental motion in support of his petition, Dkt. 12, is DENIED.

4. Parker's motion seeking expedited proceedings pursuant to 28 U.S.C. § 1657, Dkt. 15, is DENIED as moot.

5. Parker's motion seeking leave to request production of documents, Dkt. 17, is DENIED as moot.

6. The clerk of court is directed to enter judgment accordingly and close the case.

Entered October 27, 2025.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge